# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN BILECKI, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 16 cv 4267 |
| v. | ) |
| | ) Judge Sharon Johnson Coleman |
| COUNTY OF WILL, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Defendants, County of Will, Lawrence Walsh, Nick Palmer, Michael Kelley, Bruce Gould, Brian Ciszczon, Matthew Griebel, and Daniel Troike, move to dismiss [28] the First Amended Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, this Court grants in part and denies in part the motion.

**Background**

Plaintiff, John Bilecki, worked as a truck driver for Will County from September 8, 2009, until his termination on February 25, 2014. He was reinstated on January 26, 2015, after arbitration proceedings through his labor union, the American Federation of State, County, Municipal Employees ("AFSCME"). Bilecki has been politically active in Will County since 2000, assisting in campaigns for county offices and as a labor organizer. Bilecki's political activities in the county brought him into contact with Lawrence Walsh, County Executive, and Nick Palmer, Walsh's Chief of Staff.

In October 2011, Bilecki became a union steward for Local 1028 of the AFSCME. In May 2012, Bilecki served on the Executive Board representing the Highway Department for Local 1028.

---

[1] Although defendants style the motion as on behalf of all defendants, it appears from defendants' somewhat convoluted arguments that they do not challenge the sufficiency of the allegations as to Gould and Ciszczon.

1

In July 2012, Bilecki took part in the negotiation team helping to draft a new contract with the County. Defendants Palmer and Gould were part of the team negotiating on behalf of Will County. In May 2013, Bilecki became the Political Action Director for Local 1028 and ceased work as an Executive Board member.

Bilecki alleges that he was the subject of harassment. On June 25, 2013, while Bilecki was driving a County truck, someone allegedly went into his personal vehicle parked at the County Department of Transportation and turned on the interior and headlights causing the battery to die. On July 16, July 31, and August 19, 2013, someone let the air out Bilecki's tires, while his car was parked at the County Department of Transportation. On September 9 and October 3, 2013, someone put nails in his tires.

On September 11, 2013, Bilecki met with Palmer at a Will County Democrat's meeting, where they discussed the Union contract negotiations. Palmer accused Bilecki of not having any loyalty to the County, and allegedly told Bilecki that he and Walsh gave Bilecki his job and could take it away. On October 10, 2013, Bilecki received a verbal warning from the County Maintenance Administrator (who is not a defendant) for failing to wear a safety vest in violation of the Safety Manual. The County Maintenance Administrator informed Bilecki that Gould had instructed him to issue the warning. Bilecki asserts that he was unaware that there was a safety manual and that he was never provided one.

On November 18, 2013, Local 1028 went on strike against the County. Bilecki was a picket captain when he was not negotiating with the County. Bilecki was present during the strike on November 20, 2013, when Ciczcson, a non-union County employee, drove his car through the picket line to disrupt the strike and injure picketers. Ciczcson and Gould are friends. Gould regularly directed County employees who were not on strike to harass the picketers. The strike ended at 4:00 a.m. on December 4, 2013, when the County and the union reached an agreement. Palmer called

Bilecki by an expletive as he left the negotiating table. The County never attempted to quell the hostility between striking and non-striking employees.

On February 8, 2014, while Bilecki was at the City of Wilmington's public works facility, the Wilmington Public Works Director asked Bilecki how the County was doing with its salt supply because Wilmington was low. Bilecki responded that the County had four salt domes, but that he did not know the County's policy on selling salt. Gould received an email from a Wilmington official on February 10, 2014, inquiring about obtaining salt from the County.

On Sunday, February 9, 2014, Bilecki was called into work to plow snow. He worked from 5:30 a.m. to 11:00 a.m. While working that morning Bilecki learned of a train derailment in New Lenox, Illinois. A train enthusiast, Bilecki wanted to see the site of the derailment. Bilecki arrived at the scene and was approached by a New Lenox employee, William Potocki. Potocki informed Bilecki that the road was closed due to the derailment. Bilecki asked Potocki if he could pull forward a bit and take some photographs because he was a train enthusiast. After Potocki told him to go ahead, Bilecki pulled forward about a 100 feet. A couple minutes later, Ciszczon approached Potocki and asked if he was a county engineer, to which Bilecki responded, "No." Ciszczon then told Bilecki to leave and that he would be reprimanded.

On February 17, 2014, Gould, Walsh, and Palmer met to discuss Bilecki's termination. On February 18, 2014, Bilecki was called into a meeting where he was questioned regarding his involvement with the Wilmington request for salt and the train derailment. Gould, the County Maintenance Administrator, and David Delrose, the Local 1028 President, attended the meeting. Gould accused Bilecki of using his County I.D. to impersonate a County Engineer. Bilecki's I.D. only states "Highway". Gould also accused Bilecki of standing on the railroad tracks in the middle of the derailment scene. Bilecki denied the accusations and stated that he was only there because he was a train enthusiast.

3

On February 25, 2014, Gould, Walsh, and Palmer met again to discuss terminating Bilecki. The next day Bilecki received a letter from Gould stating that he was being terminated for violating the County's code of professional conduct, various policies, and procedures by discussing the salt supply and the train derailment issue. As the Will County Director of Transportation, Gould has the authority to hire and fire certain County employees, including Bilecki. Gould made the decision to terminate Bilecki and that decision was not subject to review.

On February 27, 2014, Bilecki filed for unemployment benefits. On March 3, 2014, Local 1028 filed a grievance on Bilecki's behalf. On March 4, 2014, Bilecki received notice that the County was challenging his unemployment and a hearing on Bilecki's unemployment was set for March 13, 2014. At the hearing, the Illinois Department of Employment Security ("IDES")found that Bilecki was eligible for his unemployment benefits. Bilecki received some anonymous messages accusing him of being a corrupt union boss fired for incompetence. While at a Democratic Party breakfast at the Union Hall, the Democratic Chairman approached Bilecki and informed him that Palmer said Bilecki could get his job back if he admitted to impersonating an engineer and taking a two week suspension. Bilecki declined the offer.

On April 9, 2014, Bilecki received notice from the IDES that the County had appealed the decision by IDES to provide him with unemployment benefits. After a hearing on the appeal, the decision to provide Bilecki unemployment benefits was upheld. The decision was again appealed and again affirmed.

On April 18, 2014, Walsh denied Bilecki's grievance regarding his termination. As County Executive, Walsh has the authority to review grievances from terminated employees without further approval or review. Walsh affirmed the decision to terminate Bilecki. On May 5, 2014, AFSCME filed an unfair labor practice action against the County and Gould on Bilecki's behalf. On July 28, 2014, there was an arbitration hearing to determine the propriety of Bilecki's termination. He was

eventually reinstated after the arbitrator issued a 30-day suspension on December 12, 2014, deemed already served and provided back-pay. The arbitrator did not find that Bilecki had impersonated an engineer.

On July 29, 2014, Gould and Ciszczon went to Will County's Sheriff's Office to swear out a complaint against Bilecki for impersonating a County engineer. Between July 29 and August 29, 2014, the Police Officers investigated Bilecki's conduct at the train derailment on February 9, 2014. On August 12, 2014, Detective Matthew Griebel called Bilecki to come into the Sheriff's Office for questioning. Bilecki complied with Griebel's request. After being questioned Griebel read him his Miranda rights and he was allowed to leave. On August 12, 2014, Griebel interviewed Ciszczon about the events of February 9, 2014. Griebel confirmed that Bilecki said no in response to whether he was a County engineer. Potocki was also interviewed in the investigation and asked to identify the individual at the train derailment from a photo array. He was unable to identify anyone.

On August 29, 2014, the Police Officers issued a summons upon Bilecki for false personation. That same day, Bilecki received a telephone call from a local reporter asking if he was aware that three criminal charges had been filed against him. The reporter informed him that a summons had been issued for his arrest and had been sent to the County Highway Department. Bilecki alleges it was sent to the Highway Department so that the Sheriff could issue a warrant for his arrest after he failed to appear in court on the summons. Bilecki went to the Sheriff's Office and obtained a copy of the summons and complaint. The summons issued on August 28, 2014, made three charges against Bilecki: (1) Removal of Control Device or Sign; (2) Violation of the Professional Engineering Practice Act; and (3) False Personation.[2] The Will County State's Attorney's Office appointed a special prosecutor, David Neal, to pursue the three criminal charges against Bilecki. Neal is a personal friend of defendant Walsh. On October 1, 2014, Bilecki pled not

---

[2] In paragraph 71, Bilecki alleges that the Police Officers made a decision to issue a summons for Bilecki's arrest on August 29, 2014. In paragraph 75, Bilecki alleges that the summons issued the preceding day on August 28, 2014.

5

guilty to the three charges filed against him. On November 10, 2015, the State dropped the criminal charges and entered an order of Nolle Prosequi.

Bilecki alleges that, after the arbitrator's December 12, 2014, decision on to reinstate him, Gould and others had suggested that he should behave and that "they" were not going to stop messing with him. He returned to work at the County on January 26, 2015.

Bilecki filed the seven-count First Amended Complaint, alleging First Amendment retaliation, unlawful seizure, malicious prosecution, false arrest, and, alternatively, civil conspiracy.

**Legal Standard**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

**Discussion**

Defendants move to dismiss the First Amended Complaint in its entirety for failure to state a claim. Rather than take the First Amended Complaint count by count, defendants argue for dismissal of each defendant. At the outset, however, this Court notes that Count II must be dismissed for failure to state a claim for a violation of 42 U.S.C. §1985(3) for conspiring to prevent Bilecki from engaging in union activity. Section 1985(3) does not apply to conspiracies motivated by

6

an animus in favor of unionization or against it. *United Bhd. of Carpenters and Joiners, Local 610 v. Scott*, 463 U.S. 825, 838 (1983). Section 1985(3) was not intended to reach conspiracies motivated by economic or commercial animus. *Id.* Accordingly, this Court dismisses Count II.

*1. Defendants Walsh and Palmer*

Defendants move to dismiss the claims against Walsh and Palmer because of a lack of personal involvement. Walsh is named as a defendant in Count I for First Amendment retaliation and civil conspiracy in Counts II, V, and VII. Palmer is named as a defendant in the civil conspiracy counts.

In Count I, Bilecki alleges that the defendants, including Walsh, deprived Bilecki of his First Amendment constitutional right to partake in union activities. Bilecki alleges that Walsh harassed Bilecki during his employment by placing nails in his tires and causing his car battery to die, terminated his employment, and caused him to be criminally charged among other conduct. Dkt. 24 at ¶93. A defendant may be liable under Section 1983 only if he or she participated directly in a constitutional violation. *Hildebrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003). For supervisors, the direct-participation requirement is satisfied where the plaintiff shows that the unconstitutional conduct occurred at the supervisor's direction or with his knowledge and consent. *See id.* (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)).

There is nothing in the complaint to suggest that Walsh knew and consented to the alleged harassing conduct or criminal charges. With respect to Bilecki's termination, however, the allegations are unclear as to Walsh's involvement. Bilecki only alleges that Walsh participated in two meetings that precipitated Bilecki's termination. Alleging that Walsh participated in these meetings does not support an inference that Walsh acquiesced in the decision, especially since Bilecki alleges that Gould was solely responsible for the decision to terminate Bilecki and that decision was not reviewable by anyone else. The seemingly contradictory pleading defeats this claim as pled.

"Although our pleading rules do not tolerate factual inconsistencies in a complaint, they do permit inconsistencies in legal theories." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1086 (7th Cir. 2008). Bilecki's argument that his complaint is setting forth alternative theories of liability is inapplicable. Here, either Walsh was personally involved in the decision to terminate Bilecki or he was not. If he was not, then a retaliation claim cannot be adequately pleaded on that basis. Accordingly, this Court dismisses Count I against Walsh.

Bilecki also asserts civil conspiracy claims against all defendants, including Walsh and Palmer. Count II for civil conspiracy under 42 U.S.C. §1985(3) is dismissed for the reason set forth above. Count V is pleaded as an alternative to Count IV (malicious prosecution). Count V claims civil conspiracy against all defendants, including Walsh and Palmer, alleging that the defendants acted in concert to arrest Bilecki without a reasonable basis and dismissing the charges on the eve of trial after prosecuting the matter for fifteen months. Count VII similarly alleges a civil conspiracy as an alternative to Count VI (false arrest), claiming that all defendants acted in concert to falsely arrest Bilecki without a reasonable basis.

To prevail on a conspiracy claim under Section 1983, a plaintiff must prove: (1) that two or more individuals reached an agreement to deprive the plaintiff of her constitutional rights; and (2) that there were overt acts in furtherance of this agreement that actually deprived the plaintiff of those rights. *See, e.g., Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015) (citing *Scherer v. Balkema*, 840 F.2d 437, 442 (7th Cir. 1988)). "Although every conspirator is responsible for others' acts within the scope of the agreement, it remains essential to show that a particular defendant joined the conspiracy and knew of its scope." *Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013).

Here, there are no allegations that either Walsh or Palmer joined and knew of the scope of a conspiracy to arrest and prosecute Bilecki. According to the complaint, Gould, Ciszczon, and "other unknown individuals" swore out a complaint at the Will County Sheriff's Office and "the Police

Officers" made the decision to arrest. There are no allegations tying either Walsh or Palmer to the arrest and prosecution or suggesting they joined the conspiracy and knew of its scope. Accordingly, the First Amended Complaint fails to state a claim of civil conspiracy against Walsh and Palmer.

*2. Defendants Griebel and Troike*

Defendants move to dismiss the claims against Griebel and Troike, referred to by plaintiff as "the Police Officers." The Police Officers are named as defendants in Count I (First Amendment retaliation), Count III (unlawful seizure), Count IV (malicious prosecution), Count VI (false arrest), and all three civil conspiracy claims (Counts II, V, VII).

The First Amendment protects individuals from retaliation for engaging in protected speech. To make out a *prima facie* case of First Amendment retaliation, Bilecki must allege some factual support showing that: (1) his speech was constitutionally protected; (2) he has suffered a deprivation likely to deter free speech; and (3) his speech was at least a motivating favor in the adverse action. *Zellner v. Herrick*, 639 F.3d 371, 378-379 (7th Cir. 2011). Here, there are no factual allegations implicating the Police Officers in Bilecki's termination and, further, there are no factual allegations showing that deterring Bilecki's union activities were a motivating factor for Griebel and Troike to arrest him. Accordingly, Count I is dismissed against Griebel and Troike.

Defendants move to dismiss the unlawful seizure, malicious prosecution, and false arrest claims against Griebel and Troike based on the existence of probable cause as a bar to those claims as a matter of law. *See Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015). "Police officers have probable cause to arrest when the totality of the facts and circumstances within their knowledge at the time of the arrest would warrant a reasonable person in believing the person has committed a crime." *Id.* (*citing e.g.*, *Abbott v. Sangamon County*, 705 F.3d 706, 714 (7th Cir. 2013)). An officer that reasonably believes a complaining witness may rely on the information provided to him, without having to conduct an independent investigation into their accounts prior to making the arrest.

9

*Williamson v. Curran*, 714 F.3d 432, 441 (7th Cir. 2013) (citing, *e.g.*, *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 680 (7th Cir. 2007); *Askew v. City of Chicago*, 440 F.3d 894, 895-96 (7th Cir. 2006); *Gramenos v. Jewel Cos.*, 797 F.2d 432, 439 (7th Cir. 1986)). Even if the suspect denies wrongdoing, as Bilecki does here, an officer presented with a credible report of criminal behavior is 'under no constitutional obligation to exclude all suggestions that the witness or victim is not telling the truth.'" *Id.* (quoting *Beauchamp v. City of Noblesville, Ind.*, 320 F.3d 733, 743 (7th Cir. 2003)).

Here, it is unclear what basis there was for probable cause. Ciszczon told officers that Bilecki did not identify himself as a County engineer and Potocki could not identify Bilecki in a photo array. Although Bilecki admits that he gained access to the secured area of the train derailment for a personal purpose, it is unclear what basis there was to charge him with false personation. At this stage, there are sufficient allegations of a lack of probable cause to support the claims in Counts III, IV, and VI.

Defendants also move to dismiss the civil conspiracy claims against the police officers. These claims in Counts II, V, VII are pleaded as alternatives to the other claims. As with the civil conspiracy claims against defendants Palmer and Walsh, there are no allegations to show that Griebel and Troike formed an agreement to deprive Bilecki of his constitutional rights. While the allegations may support claims of unlawful seizure, false arrest, and malicious prosecution, without some facts suggesting an agreement the alternative conspiracy claims are inadequately pled. Accordingly, this Court dismisses the civil conspiracy counts against Griebel and Troike.

*3. Monell Municipal Liability Against Will County and the Will County Sheriff's Office*

Defendants move to dismiss the claims against Will County and the Will County Sheriff's Office because there is no basis for municipal liability. Bilecki names Will County as a defendant in Count I (First Amendment retaliation), Count IV (malicious prosecution), Count VI (false arrest),

10

and the three civil conspiracy claims (Counts II, V, VII). The Sheriff's Office is named as a defendant in all counts of the complaint.

In order for a municipality, or municipal office or official in their official capacity, to be held liable under section 1983, the violation of the plaintiff's rights must result from a widespread custom or policy because there is no *respondeat superior* liability. *Monell v. Department of Social Services*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037-38, 56 L. Ed. 2d 611 (1978); *Ball v. City of Indianapolis*, 760 F.3d 636, 643 (7th Cir. 2014). There are three avenues to a viable claim for municipal liability: (1) the municipality had an express policy that, when enforced, caused a constitutional deprivation; (2) the municipality had a widespread practice that is so well-settled as to constitute a custom or usage with the force of law; or (3) the plaintiff's constitutional injury was caused by a person with final policy making authority. *Calhoun v. Ramsey,* 408 F.3d 375, 379 (7th Cir. 2005).

Here, Bilecki bases his *Monell* claims on the conduct of Gould and Walsh as official policy makers for Will County and Griebel and Troike as official policymakers for the Sheriff's Office. It is unclear, what role, if any, Will County Sheriff Michael Kelley is alleged to have played. None of these defendants appear to have final policymaking authority for the County or the Sheriff's Office. Bilecki asserts that Gould has the final authority to hire and fire employees for the County Department of Transportation. Similarly, Bilecki asserts that Walsh has the final authority over labor grievances. While both Gould and Walsh may be decisionmaker's the allegations do not support an inference that they are policymakers for the purposes of *Monell* liability. "It is a well-established principle that the mere unreviewed discretion to make hiring and firing decisions does not amount to policymaking authority. There must be a delegation of authority to set policy for hiring and firing, not a delegation of only the final authority to hire and fire." *Valentino v. Village of S. Chicago Heights,* 575 F.3d 664, 675 (7th Cir. 2009). "The fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal

11

liability based on an exercise of that discretion." *Id.* There is no support in the complaint for a finding that either Gould or Walsh is "responsible for establishing final government policy on a particular issue." *Id.* Instead, it appears they were simply exercising their particular functions.

Likewise, there is no factual support for a finding that either Griebel or Troike were acting as policymakers on behalf the Sheriff's Office. The allegations in the complaint indicate that they were carrying out their duties as law enforcement officers. Accordingly, this Court dismisses the *Monell* claims against Will County and the Sheriff's Office.

Because this Court has dismissed the civil conspiracy claims there is no need to evaluate whether those claims constitute duplicate pleading instead of alternative pleading. *See Beringer v. Std. Parking O'Hare J.V.,* Nos. 07 C 5027, 07 C 5119, 2008 WL 4890501, at *4-5, 2008 U.S. Dist. LEXIS 91568 (N.D. Ill. Nov. 12, 2008) (Pallmeyer, J.) (explaining the difference between duplicate and alternative pleading).

**Conclusion**

Based on the foregoing discussion, defendants' motion to dismiss is granted in part and denied in part. It is denied with respect to the claims in Counts III, IV, and V, against Griebel and Troike, and granted in all other respects. Plaintiff is given 21 days to file an amended complaint consistent with this Order.

IT IS SO ORDERED.

ENTERED:

Dated: January 4, 2017

SHARON JOHNSON COLEMAN
United States District Judge